**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| **AMERICAN ASSOCIATION OF** | ) |
| **KIDNEY PATIENTS** | ) |
| **3505 E. Frontage Rd., Ste. 315** | ) |
| **Tampa, Fl. 33607** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **-v-** | ) |
|  | ) |
| **LINDA M. SPRINGER** | ) |
| **in her official capacity as** | ) |
| **Director of the United States Office** | ) |
| **of Personnel Management** | ) |
| **1900 E Street, N.W.** | ) |
| **Washington, D.C. 20415-0001,** | ) |
|  | ) |
| **Defendant.** | ) |

**Civil Action No._____**

_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.    STATEMENT OF FACTS**

**A.    The Combined Federal Campaign**

The Combined Federal Campaign ("CFC") was established by President Kennedy in

1961 as the exclusive means for federal employees[1] to make charitable contributions at their

places of work.  *See* 5 C.F.R. § 950.102 (a); *Planned Parenthood of Metropolitan Washington,*

*D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988).  In 2002, nearly four million federal civilian

and postal employees and military personnel were provided the opportunity to contribute to the

charities of their choice.  Federal employees and military personnel donated approximately $237

_____

[1] Armed forces personnel and postal service employees, as well as civil servants
participate in the CFC, which is conducted annually.

million to the 2002 CFC.  *See* OPM News Release, May 22, 2003.

The Director of the Office of Personnel Management ("Director") supervises the CFC.  5 C.F.R. § 950.102 (c).  The Director renders all final decisions regarding disputes.  The Director establishes and maintains an official list of local CFCs and the geographical areas they cover. The Director also designates Local Federal Coordinating Committees ("LFCCs") which conduct and supervise the local CFC in particular communities.  *See* 5 C.F.R. §§ 950.103 (a) and (b); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988).

Each year the LFCCs establish a six (6) week period during which federal employees may be solicited for charitable contributions.  The solicitations may not begin before September 1 and may not extend beyond December 15.  Contributions are made either directly to the CFC or are withheld from participating employees' paychecks.  5 C.F.R. § 950.103.

Each year the Director compiles a list of charities eligible to participate nationally in all local campaigns ("National List").  Each LFCC is required to include the National List charities in the CFC brochures prepared and distributed to eligible federal employees in accordance with CFC regulations.  Upon receiving the brochure, federal employees receive a pledge card and identify charities they wish to support.  5 C.F.R. §§ 950.105 and 950.201.

A charitable organization wishing to be included in the CFC applies annually to the Director.  An organization seeking inclusion on the National List, *inter alia*, must certify: (a) it provides services or benefits in at least fifteen (15) states or a foreign country over the three year period immediately preceding the campaign year involved; and (b) it is recognized by the Internal Revenue Service as a tax-exempt organization under § 501(c)(3) of the Internal Revenue

2

Code of 1986 ("Code").  5 CFR § 950.202.[2]

The Director is required to issue the National List to all LFCCs  each year.  As noted in Exhibit I to the complaint, the Director intends to distribute the National List on or about July 31, 2006 *via* display on the OPM web site.  The web site will contain the names of and information about charities included in the National List.

To the National List, LFCCs are permitted to add local charities, in accord with a local application process.  The LFCCs do not have discretion to remove a National List charity from the CFC.  The decision by the Director is final as to which charities are admitted to the CFC as National List charities.

Sometime shortly after July 31, 2006, it is anticipated the LFCCs will commence the printing of brochures for distribution to federal employees.[3]  These brochures must contain the names of and information about National List charities.  (Local charities, *but not National List charities*, will vary from brochure to brochure, depending on the region covered by the local federal campaign.)

---

[2] Section 950.202 states that organizations seeking national list eligibility must "(a) Certify that it [sic] provides or conducts real services, benefits, assistance, or program activities, in 15 or more different states or a foreign country over the 3 year period immediately preceding the start of the year involved.  The requirement cannot be met on the sole basis of services provided through an "800" telephone number or by sending materials via the U.S. Postal Service or a combination thereof.  A schedule listing those states (minimum 15) or the foreign countries (minimum 1) where the program activities have been provided and a detailed description of the activities in each state or foreign country must be included with the application.  While it is not expected that an organization maintain an office in each state or foreign country, a clear showing must be made of the actual services, benefits, assistance or activities provided in each state or foreign country."

[3] The exact printing dates will vary somewhat from one local LFCC to another.

3

B.    The American Association of Kidney Patients ("AAKP") and
      Its Application for Inclusion in the 2006 CFC

AAKP is a non-profit, charitable corporation exempt from federal income tax as an

organization described in  Internal Revenue Code § 501(c)(3).  The AAKP exists to serve the

needs, interests and welfare of all kidney patients and their families.  Its mission is to improve

the lives of fellow kidney patients and their families by helping them to deal with the physical,

emotional and social impact of kidney disease.  To accomplish these goals, AAKP engages in a

variety of educational and supportive programs.  (Complaint, ¶ 5.)

AAKP is a member of the Health and Medical Research Charities of America (hereafter

referred to as "HMR").  HMR is a tax-exempt, federated group which represents charitable

organizations that work to improve health, assist care givers and find cures.  HMR organizes and

prepares its member charities for effective participation in at-work employee charitable fund

drives and other types of fund raising activities.  HMR engages in fund drive application

assistance, reviews and certifies charitable agency eligibility documentation, disseminates

information about its member charities to the workplace-giving public, organizes member

participation in fund drive promotional educational events, represents its members before fund

drive organizing or regulatory authorities, and transmits contributions and contributors' names

and addresses to recipient charities.  HMR is an Office of Personnel Management approved

national federation eligible to participate in the 2006 CFC on behalf of its member organizations.

(Complaint, ¶ 6.)[4]

---

[4] Generally, approved national federations such as HMR, which are eligible to participate
in the CFC on behalf of their member organizations, submit annually to OPM lists of their
members eligible to participate in a particular CFC.  The individual members do not submit
formal applications to participate in the particular CFC unless OPM so requests.

On or about January 27, 2006, HMR submitted its list of eligible member organizations certified for participation in the 2006 CFC. AAKP was included among the eligible member organizations. On or about February 8, 2006, Defendant requested from HMR a copy of AAKP's application to participate in the 2006 CFC. On or about February 10, 2006, HMR submitted to defendant AAKP's 2006 CFC application. In its application, AAKP described in detail activities undertaken in more than 15 states. *See* Exhibit "A"attached to the Complaint. HMR submitted a copy of AAKP's Attachment A along with its 2006 CFC application on the required OPM form. Attachment A described AAKP's services, benefits, assistance and program activities undertaken throughout the United States. AAKP described how it held free educational sessions for those who have or are approaching kidney disease, provided financial support through educational grants to fund kidney care related programs, disseminated educational materials, brochures, and programs, attended and disseminated materials at the National Renal Administrators Association Annual Meeting, attended and disseminated educational materials at the American Association of Diabetes Educator's Annual meeting. (Complaint, ¶ 13.)

Nevertheless, on April 26, 2006, the Defendant denied AAKP's application for inclusion in the 2006 CFC, stating, in pertinent part: AAKP "did not include sufficient information to support a claim that it provided or conducted real services, benefits, assistance, or program activities in 15 or more states over the tree-year period immediately preceding January 2006."

By letter dated May 3, 2006, Cindy Schneible, President of HMR appealed the initial denial of AAKP's application to participate in the 2006 CFC. Schneible asserted that OPM conducted an incomplete review of the documentation, that it inaccurately read Memo 2004-10,

that OPM's denial of AAKP was based on an inconsistent and arbitrary review of the federation's submitted documentation, and that OPM had approved an application containing descriptions of services substantially similar to AAKP's.

By letter dated July 17, 2006, the Defendant, through OPM Deputy Director Blair, sustained the decision to deny AAKP's application.  Blair stated in pertinent part:

> *I am sustaining the decision to deny the application[] of the American Association of Kidney Patients .... The American Association of Kidney Patients is denied because the applicant has claimed services in states for which it had only provided educational materials about the organization's work.  Mere dissemination of information and publications is not considered a real service and does not meet the national eligibility criteria.  Services claimed for this applicant in the states of Alabama, Colorado, District of Columbia, Indiana, and Utah are therefore not considered sufficient to satisfy the national eligibility criteria.*

OPM's final determination listed services in five states (Alabama, Colorado, the District of Columbia, Indiana and Utah) as not meeting eligibility criteria.  However there were an additional fifteen (15) states (New York, Louisiana, California, Mississippi, New Jersey, Florida, Maryland, Texas, Illinois, Arizona, Georgia, Maryland, Missouri, Pennsylvania, and Tennessee) listed in the appeal where eligible services were provided, hence AAKP met the 15 state requirement.  Moreover, in Alabama, Colorado, the District of Columbia, Indiana and Utah, the services described by AAKP were "presented and distributed" – not the "mere dissemination of information."  AAKP's activities included onsite public education.

5 C.F.R. §§ 950.102(c) and 950.205(f) provide that "[t]he Director's decision is final for administrative purposes.

## II.    AAKP  IS ENTITLED TO INJUNCTIVE RELIEF

### A.    Standards For Granting Preliminary Injunctive Relief

AAKP is entitled to preliminary injunctive relief if it demonstrates (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable injury if the requested relief is not granted; (iii) no other parties will be harmed if temporary relief is granted; and (iv) issuance of the injunction will serve the public interest. *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F. 2d 921, 925 (D.C. Cir. 1958); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998).

AAKP is not required to prevail on each of these factors. Under *Holiday Tours*, these factors must be viewed as a continuum, with the presence of more than one factor compensating for less of another. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Cityfed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). A court may issue an injunction "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.* Thus, preliminary injunctive relief may issue "with either a high probability of success and some injury or vice versa." *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C. Cir. 1985).

### B.    There Is A Substantial Likelihood AAKP Will Prevail On The Merits

In this action, AAKP appeals from an informal agency adjudication reviewable under § 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

Pursuant to § 706 of the APA, informal agency action must be set aside "if it fails to meet statutory, procedural or constitutional requirements or if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...'" 5 U.S.C. § 706(2)(A);

*Olenhouse v. Commodity Credit Corporation*, 42 F.3d 1560 (10th Cir. 1994) quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-14 (1971). A reviewing court, in applying the "arbitrary or capricious" standard, asks whether the agency engaged in reasoned decision making. *Clifton Power Corp. v. F.E.R.C.*, 88 F.3d 1258 (D.C. Cir. 1996); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

      1.     <u>Defendant's Denial of AAKP's Application Abridges Its First Amendment Rights</u>

Charitable solicitation of federal employees through participation in the CFC is protected by the First Amendment. *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788 (1985).

> The brief statements in the CFC literature directly advance the speaker's interest in informing readers about its existence and goals. Moreover, an employee's contribution in response to a request for funds functions as a general expression of support for the recipient and its views...[T]he CFC literature facilitates the dissemination of views and ideas by directing employees to the soliciting agency to obtain more extensive information...Finally, without the funds obtained from solicitation in various fora, the organization's continuing ability to communicate its ideas and goals may be jeopardized....Thus, the nexus between solicitation and the communication of information and advocacy of causes is present in the CFC as in other contexts.

*Id.* at 3447.

In *NAACP Legal Defense and Educational Fund, Inc. v. Campbell*, 504 F. Supp. 1365 (1981), two charities challenged their exclusion from the CFC. The Manual on Fund-Raising Within the Federal Service for Voluntary Health and Welfare Agencies ("Manual")[5] stated that "[o]nly nonprofit, tax-exempt charitable organizations, supported by voluntary contributions from the general public and providing direct services to persons in the fields of health and

---

[5]The Manual predated the current CFC regulations found at 5 CFR Part 950.

8

welfare services are eligible for approval."

The defendant contended the charities were not eligible to participate in the CFC because they served as legal advocates for groups but did not provide "direct services" to persons such as providing legal representation for individuals unable to afford the cost of retaining private attorneys. The court found that the "direct services" requirement did not meet First Amendment standards. The term was not defined "and the term [direct services] standing alone, is too vague to comport with the strict standards of specificity required when limits are placed on First Amendment activity." *Id.* at 1367. No established standards existed that would guide the government in determining whether an organization provided "direct services." The "direct services" requirement did not have "the precision necessary to comport with constitutional requirements." *Id.* at 1368.

Similarly, the requirement that eligible CFC national list participants must demonstrate they provide or conduct "real" or "actual" services, benefits, assistance or program activities is similarly vague because the terms "real" or "actual" services, benefits, assistance or program activities are not defined in the regulations. What constitutes "real" or "actual" conduct is capable of subjective determinations without the necessary specificity to permit applicants to conform their conduct to qualifying standards.

There is no dispute that in nineteen (19) states AAKP actively promotes education and awareness regarding kidney disease. In *more than* fifteen (15) states across the country AAKP has members, recruits members, disseminates educational materials, holds and participates in kidney disease related educational programs, and otherwise seeks to educate the public concerning kidney disease.

AAKP listed in Attachment A to its 2006 CFC application the states where these activities and services occurred.  AAKP provided detailed information in its application with regard to the activities described above. Yet, Defendant arbitrarily determined that AAKP's detailed description of its activities was insufficient because "the applicant has claimed services in states for which it had only provided educational materials about the organization's work. Mere dissemination of information and publications is not considered a real service and does not meet the national eligibility criteria."

Without a precise definition of "real" or "actual" in the regulations, AAKP could not possibly foresee what constitutes a sufficiently "real" or "actual" service to qualify for participation in the CFC.  Neither could AAKP conform its actions to such imprecise standards. Because the regulations are vague as to what qualifies as "real" or "actual" benefits or services to be conducted in each of the 15 states, the regulations Defendant relied upon violate the First Amendment.

Furthermore, OPM continues to misinterpret the CFC regulations.  The original regulations do not allow for services provided via 1-800 numbers or sending materials via mail. OPM has expanded this very narrow and concise prohibition to cover all distribution of materials, even if those materials are handed out in person at educational conferences.  This interpretation is not supported by the regulations.

2.    Defendant's Denial of AAKP's 2006 CFC Application Was Arbitrary and Capricious

Under the "arbitrary or capricious" standard, the court reviews an agency's decision making process and determines whether the agency examined "the relevant data and articulate[d] a satisfactory explanation for its action *including a rational connection between the facts found*

10

*and the choice made.*"  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S.

29, 43 (1983) (emphasis added.); *Touris Records, Inc. v. Drug Enforcement Administration*, 259

F.3d 731 (D.C. Cir. 2001).  Agency action will be set aside "if the agency relied on factors which

Congress has not intended for it to consider, entirely failed to consider an important aspect of the

problem, *offered an explanation for its decision that runs counter to the evidence before the*

*agency,* or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise."  *Motor Vehicle Manufacturers,* 463 U.S. at 43 (emphasis added).

    The grounds upon which the agency made its decision must be clearly articulated and a

reasoned explanation for its action must appear in the record.  "It is well-established that an

agency's action must be upheld, if at all, on the basis articulated by the agency itself."  *Id.* at 50.

The court is required to conduct a plenary review of the record to ascertain whether the agency's

action is sustained by the record and supported by "substantial evidence."  *Association of Data*

*Processing v.  Board of Governors,* 745 F.  2d 677, 683-84 (D.C. Cir. 1984).  The agency's

decision, therefore, must be supported by facts found in the record.

> "When the arbitrary or capricious standard is performing that function of assuring
> factual support, there is no *substantive* difference between what it requires and
> what would be required by the substantial evidence test [applicable to formal
> adjudication under §706(2)(E)], since it is impossible to conceive of a
> 'nonarbitrary' factual judgment supported only by evidence that is not substantial
> in the APA sense."

*Id.* at 683. (emphasis in original.)

    The Director has acted without authority and in an arbitrary and capricious manner in

rejecting AAKP's application for inclusion in the 2006 CFC.  In her July 17, 2006 letter, the

Director rejected AAKP's 2006 CFC application stating:

> *I am sustaining the decision to deny the application[] of the American*

> *Association of Kidney Patients.... The American Association of Kidney Patients is denied because the applicant has claimed services in states for which it had only provided educational materials about the organization's work.  Mere dissemination of information and publications is not considered a real service and does not meet the national eligibility criteria.  Services claimed for this applicant in the states of Alabama, Colorado, District of Columbia, Indiana, and Utah are therefore not considered sufficient to satisfy the national eligibility criteria.*

AAKP provided extensive and detailed information about its purposes and activities to defendant in its 2006 CFC application.  Attachment A to its 2006 CFC application identified the states where AAKP provides extensive information and services to the public about kidney disease.  AAKP described in more than ample detail its activities in each state.  AAKP demonstrated conclusively that it conducted "real services, benefits, assistance or program activities" in *at least* 15 states during the previous three year period.  *See* Exhibit A to the Complaint.

Thus, defendant's rationale for denying AAKP's application, *viz.*, that"the applicant has claimed services in states for which it had only provided educational materials about the organization's work.  Mere dissemination of information and publications is not considered a real service and does not meet the national eligibility criteria." inexplicably ignores the detailed description of activities provided in AAKP's Attachment A.

Moreover, OPM's denial of AAKP's form of distribution of materials is inconsistent with OPM's own instructions and prior approvals of other charities by OPM.  AAKP's program details in Attachment A are substantially similar to those described in SHHH's Attachment A, which was accepted to the CFC.  *See* Exhibit "E" to the Complaint.

Defendant's decision, therefore, was arbitrary and capricious.  AAKP submits there is a substantial likelihood it will prevail on the merits.

**C.     AAKP Will Suffer Irreparable Injury If Preliminary Injunctive Relief Is Not Granted**

The Director will distribute the National List to LFCCS on or about  July 31, 2006.  *See* CFC schedule attached as Exhibit I to the complaint.  The issuance date of the National List for the 2006 CFC is imminent.

The LFCCs  publish this list in a brochure which identifies participating nationally eligible charities and includes a short description of their  programs and purposes.  The brochures  provide essential information relied upon by federal employees in deciding which charities to support through direct contributions and payroll deductions.

Exclusion of AAKP from the National List for the 2006 CFC will inflict substantial economic harm and other injuries which cannot be rectified for several reasons.  AAKP will be deprived of the exercise of its First Amendment right to communicate its message to millions of federal employees who otherwise would not have the opportunity to receive this information.  Not coincidentally, AAKP also will be precluded from seeking  financial support for its cause during the 2006 CFC.  The CFC is the exclusive means whereby federal employees may be solicited for charitable contributions in the workplace.  *See, e.g.*, *Planned Parenthood of Metropolitan Washington, D.C. v.  Horner*, 691 F. Supp. 449 (D.D.C. 1988) (injunction was issued preventing enforcement of OPM regulation preventing a national organization and one of its affiliates from simultaneously appearing on the list of eligible organizations distributed to federal employees in their local CFCs).  Moreover, given the large number of federal employees located in every state and abroad, AAKP cannot solicit contributions directly from this same audience without incurring exorbitant costs.

 Finally, AAKP cannot recover from the government the amount of contributions it will

13

not receive as a result of the Defendant's action. In addition to the loss being difficult, if not impossible to quantify, AAKP has no remedy at law as the result of the federal government's immunity from damages for these types of suits. *See, e.g.*, *Woerner v. United States Small Business Administration*, 739 F. Supp. 641 (D.D.C. 1990).

The losses described herein are real, immediate and irremediable absent preliminary injunctive relief.

**D.    Third Parties Will Not Suffer Harm If Preliminary Injunctive Relief Is Granted**

No other parties will suffer harm if the relief requested by AAKP is granted. The list of national organizations eligible to participate in the CFC easily can be updated and revised by the Director to include AAKP and be distributed to the local LFCCs *via* OPM's web site. The brochures have yet to be printed and distributed, so no additional expenses for reprinting the brochures need be incurred. Moreover, other eligible charitable organizations participating in the CFC will not be harmed because the 2006 CFC has yet to begun. For these reasons, no harm will occur to other parties if preliminary injunctive relief is granted.

**E.    Grant of Preliminary Injunctive Relief Will Serve The Public Interest**

The public interest is undoubtedly served by AAKP's participation in the CFC. Inclusion of AAKP in the 2006 CFC permits millions of federal employees to learn of the organization, to receive its message, and to make donations to permit the organization to continue to carry out its charitable activities. If the requested preliminary injunctive relief is granted, AAKP's participation in the CFC will guarantee that AAKP may continue to hold free educational sessions for those who have or are approaching kidney disease, provide financial support through educational grants to fund kidney care related programs, disseminate educational materials,

14

brochures, and programs, attend and disseminate materials at various national meetings, and otherwise educate the public about kidney disease.

Moreover, "there is a strong public interest in meticulous compliance with law by public officials." *Fund for Animals v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993). In the instant action, the Defendant's arbitrary denial of AAKP's application was based on vague and imprecise standards and on reasons not supported by the record.

Therefore, the public interest will be served by granting the requested preliminary injunctive relief.

## III.     CONCLUSION

For the reasons stated herein, AAKP respectfully requests this court to order the requested preliminary injunctive relief.

Respectfully submitted,

American Association of Kidney Patients
By Counsel


_/s/_____
Bernard J. DiMuro, Esq. (D.C. Bar #929406)
DIMURO GINSBERG, P.C.
908 King Street, Suite 200
Alexandria, Virginia 22314
(703) 684-4333
(703) 548-3181 (facsimile)

Noland MacKenzie Canter, III (D.C. Bar #93616)
Mark J. Diskin (D.C. Bar #334086)
Copilevitz & Canter, LLC
1900 L Street, N.W., Suite 215
Washington, D.C. 20036

*Counsel for Plaintiff*